# SUPREME COURT OF THE UNITED STATES

ROBERT F. CALDWELL AND PETE RONALD
MARTINEZ *v.* NATHANIEL QUARTERMAN,
DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL
INSTITUTIONS DIVISION

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 05–10671.   Decided October 10, 2006

The petition for a writ of certiorari is denied.

Statement of JUSTICE STEVENS respecting the denial of the petition for writ of certiorari.

The limitations period in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a "person in custody pursuant to the judgment of a State court" to file an application for a writ of habeas corpus within one year of "the date on which the judgment became final . . . ." 28 U. S. C. §2244(d)(1)(A). This case raises the question whether a Texas order of "deferred adjudication probation" is a "judgment" under the statute. In essence, a deferred adjudication probation order places a defendant on probation while postponing any adjudication of guilt. See Tex. Code Crim. Proc. Ann., Art. 42.12, §5 (Vernon 2006 Supp. Pamphlet). If the defendant successfully completes the terms of his probation, the charges against him are dismissed, §5(c); if he violates those terms, he is found guilty and sentenced, §5(b). See generally *Taylor* v. *State*, 131 S. W. 3d 497, 499–500 (Tex. Crim. App. 2004). Often, a defendant's case is finally resolved many years after the entry of the order of deferred adjudication.

That is precisely what happened here. Petitioners Robert Caldwell and Pete Martinez pleaded guilty and were placed on deferred adjudication probation. Both subsequently violated the terms of their probation, had their probation revoked, were adjudicated guilty pursuant to their earlier pleas, and were given lengthy prison sentences. Promptly after the entry of orders revoking their probation, petitioners applied for federal writs of habeas corpus. The Court of Appeals held that their applications were time barred because they were filed more than one year after the entry of orders deferring adjudication. The heart of the Fifth Circuit's holding is that these earlier orders were final judgments under AEDPA.

However, as Judge DeMoss noted in his dissent, there "are two absolute essentials to a final judgment in a criminal case"—first, a determination of guilt or innocence, and second, the imposition of a sentence. *Caldwell* v. *Dretke*, 429 F. 3d 521, 531 (CA5 2005). Neither occurred prior to the revocation of petitioners' probation. Indeed, reconciling the majority's conclusion with AEDPA's text is particularly difficult because Texas law provides that a "judgment is the written declaration of the court signed by the trial judge and entered of record *showing the conviction or acquittal of the defendant*." Tex. Code Crim. Proc. Ann., Art. 42.01, §1 (Vernon 2006 Supp. Pamphlet) (emphasis added). An order of deferred adjudication probation is not a conviction, and it is therefore not a "judgment" under Texas law. See *Davis* v. *State*, 968 S. W. 2d 368, 371 (Tex. Crim. App. 1998). Under a literal reading of the federal statute, such an order cannot be a "judgment of a State court" within the strict terms of §2244(d)(1)(A).

Despite this conflict between the Court of Appeals decision and the plain text of AEDPA, our decision to deny certiorari is supported by at least two valid considerations. First, if a court is convinced that a nonliteral reading of a statute is more faithful to the actual intent of the enacting

Congress, that reading should normally be preferred. See, *e.g.*, *Woodford* v. *Ngo*, 548 U. S. \_\_\_ (2006); *Koons Buick Pontiac GMC, Inc.* v. *Nigh*, 543 U. S. 50 (2004); see also *Dodd* v. *United States*, 545 U. S. 353, 361–362, and n. 1 (2005) (STEVENS, J., dissenting); *Barnhart* v. *Sigmon Coal Co.*, 534 U. S. 438, 472 (2002) (STEVENS, J., dissenting). In this case**,** the Fifth Circuit had a justifiable basis for concluding that a nonliteral reading is consistent with Congress' intent to "'curb the abuse of the statutory writ of habeas corpus'" and "'address problems of unnecessary delay.'" See 429 F. 3d, at 528 (quoting H. R. Conf. Rep. No. 104–518, p. 111 (1996)). Second, the Court of Appeals expressly limited its holding to "instances where a petitioner" brings an untimely challenge to "substantive issues relating to an original order of deferred adjudication probation." 429 F. 3d*,* at 530, n. 24. It did not foreclose timely challenges to such orders, nor did it foreclose timely challenges to the sentencing aspects of the revocation proceedings. The Fifth Circuit also did nothing to upset the practice of deferred adjudication probation itself, which confers considerable benefits upon defendants who do not violate the terms of their probation.\* This narrow holding is unlikely to produce injustice. Accordingly, the denial of certiorari is appropriate.

---

\*See *Davis* v. *State*, 986 S. W. 2d 368, 370 (Tex. Crim. App. 1998) ("A defendant who has been discharged from deferred adjudication [probation] is immediately eligible to serve on a jury, to vote, and to be recommended for probation by a jury after a finding of guilty at a subsequent trial" (footnotes omitted)); *Ex parte Laday*, 594 S. W. 2d 102, 104 (Tex. Crim. App. 1980) ("The whole point of [the deferred adjudication probation] statute is to avoid having to formally adjudicate the defendant's guilt unless and until he demonstrates that he cannot abide by the terms of probation set by the court. If the defendant successfully completes his probation, his offense is essentially expunged").