**Opinion issued July 12, 2012**



In The

# Court of Appeals

For The

## First District of Texas

———————————

### NO. 01-11-00365-CR

———————————

### JOSUE IGNACIO CASTILLO, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Case No. 1275008**

---

### O P I N I O N

A jury convicted appellant, Josue Ignacio Castillo, of possession with intent

to deliver cocaine weighing between 4 and 200 grams.[1]  The jury also found that

---

[1]      *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D) (providing that cocaine
         is penalty group one substance), 481.112(a), (d) (providing that manufacturing,

appellant used or exhibited a deadly weapon, namely, a firearm, during the commission of the offense or during the immediate flight therefrom and assessed appellant's punishment at eight years' confinement. In his sole issue, appellant argues that the evidence was insufficient to support the jury's finding that he used or exhibited a deadly weapon during the commission of the offense.

We affirm.

## Background

A confidential informant provided information to the Houston Police Department ("HPD") concerning drug activity at a residence in Houston, Texas. The informant told police that three Hispanic males—two in their early- to mid-twenties and one who was older—were selling cocaine, marijuana, and heroin, that the three men were armed with handguns, that there was an assault rifle in the residence, and that a camera system monitored the front of the residence. HPD conducted surveillance on the home and observed drug-trafficking activity, including the sale of narcotics to the confidential informant by two different Hispanic males at the residence, and it obtained and executed search and arrest warrants.

At the time officers executed the warrants, they discovered three adult males, two adult females, one teenager, and an infant sleeping inside the residence.

delivery, or possession with intent to deliver penalty group one substance between four and 200 grams is first degree felony) (Vernon 2010).

2

In the closet of the bedroom where appellant was found sleeping with his pregnant girlfriend, officers discovered 5.2 grams of crack cocaine, 1.7 grams of powder cocaine, a digital scale, and a razor blade. Leaning against the wall in the corner of the bedroom, in plain view, officers found a loaded AK-47 assault rifle and a loaded 20-gauge single-shot shotgun. In a nearby drawer, they recovered additional ammunition for the assault rifle and additional shotgun shells. Officers also discovered a knife and sheath, men's clothing consistent with appellant's size, and a key to the residence in the same room where appellant was sleeping. Officer E. Medrano testified that it appeared as if appellant and his girlfriend "had lived there for a while."

In another room containing a second couple and their infant, officers recovered additional crack cocaine, marijuana, heroin, various pills, a loaded 12-gauge shotgun, a .50 caliber handgun, a safe, and large amounts of cash. Officer N. Ashraf testified that the quantity of cocaine found in the house indicated that it was not for personal use. Officers T. Merrill and Medrano both testified that drug traffickers have firearms to protect themselves and to protect their money and narcotics. Officer Merrill testified that assault rifles, like the AK-47, are capable of firing rounds that can pierce body armor worn by police officers.

## Sufficiency of the Deadly Weapon Finding

In his sole issue, appellant argues that the evidence was insufficient to support the jury's finding that he used or exhibited a deadly weapon during the commission of the offense.

When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (holding that *Jackson* standard is only standard to use when determining sufficiency of evidence). The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks*, 323 S.W.3d at 899; *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to that determination.").

A deadly weapon finding can be made if a deadly weapon "was used or exhibited during the commission of a felony offense. . . ." TEX. CODE CRIM. PROC. ANN. art. 42.12 § 3g(a)(2) (Vernon Supp. 2011). Thus, "we must determine whether a rational trier of fact could have found beyond a reasonable doubt that [a]ppellant used the guns to facilitate possession and delivery of the narcotics." *See Coleman v. State*, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004).

In the context of a deadly weapon finding, the term "use" means any employment of a deadly weapon, even simple possession, if that possession facilitates the associated felony. *Id.*; *see Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989) (holding that "use" of deadly weapon "extends as well to *any* employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony"). The term "exhibit" requires a weapon to be consciously shown, displayed, or presented to be viewed. *Coleman*, 145 S.W.3d at 652; *Patterson*, 769 S.W.2d at 941.

Here, officers executing the search warrant found an AK-47 assault rifle and a 20-gauge shotgun, both of which were loaded and were leaning against the wall, in immediate proximity to the drugs and drug paraphernalia. *See Gale v. State*, 998 S.W.2d 221, 222–23 (Tex. Crim. App. 1999) (upholding deadly weapon finding when guns found in closet with drugs included Ruger Mini-14 rifle, Uzi semi-automatic assault-type rifle, nine-millimeter rifle, and nine-millimeter handgun that

5

were unloaded but could have been loaded within "seconds"). The guns in question were also accessible to appellant, as they were in plain view, leaning against the wall in the room where officers found appellant sleeping at the time they executed the search warrant. *See id.* at 226 ("This is not a case where a person's weapons are found in a gun cabinet or closet completely separate from the criminal enterprise; here, all of the weapons were virtually inches away from the contraband and its alleged proceeds . . . ."); *see also Coleman*, 145 S.W.3d at 654 (upholding deadly weapon finding when guns and safe containing drugs were found in separate rooms of appellant's house, in spite of fact that appellant was handcuffed in police car at time of discovery of weapons). In that same room, the officers also discovered additional ammunition in a drawer, which was also easily accessible to appellant.

Officers recovered cocaine and other drugs in a quantity that, according to Officer Ashraf, would not be intended for mere personal use, and officers recovered other drug paraphernalia, like the scale and razor blade, associated with the distribution of narcotics. Finally, Officers Merrill and Medrano testified that it is common for drug traffickers to keep weapons to protect themselves and their drugs and cash and that a weapon like an AK-47 assault rifle can fire rounds

capable of piercing body armor.[2] *See Sanchez v. State*, 243 S.W.3d 57, 73–74 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (considering fact that weapons were found in room adjacent to "significant quantity" of narcotics, which indicated use of weapons as part of narcotic distribution outlet, in concluding evidence was sufficient to support a deadly weapon finding); *Robinson v. State*, 174 S.W.3d 320, 332–33 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (considering facts that loaded guns and drugs were in close proximity to each other and appellant, appellant also possessed large amount of cocaine and cash, and officer testified that people with large quantities of drugs frequently use weapons to protect drugs in concluding evidence was sufficient to support deadly weapon finding).

Thus, viewing the evidence in the light most favorable to the jury's finding, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant used the guns to facilitate possession and delivery of the

---

[2] In *Coleman v. State*, Judge Cochran, in a concurring opinion, outlined several factors addressed in various Texas and federal cases that courts can consider in determining the sufficiency of the evidence to support a deadly weapon finding. *See* 145 S.W.3d 649, 658–59 (Tex. Crim. App. 2004) (Cochran, J., concurring). These factors include: (1) the type of gun involved; (2) whether or not the gun was loaded; (3) whether or not the gun was stolen; (4) the proximity of the gun to the drugs, drug paraphernalia, or drug manufacturing materials; (5) the accessibility of the gun to whomever controlled the premises; (6) the quantity of drugs involved; and (7) any evidence that might demonstrate an alternative purpose for the presence of the guns. *Id.* at 659; *see also Bahr v. State*, 295 S.W.3d 701, 709–10 (Tex. App.—Amarillo 2009, pet. ref'd) (applying Judge Cochran's *Coleman* factors).

narcotics. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Coleman*, 145 S.W.3d at 655.

Appellant argues that the officers did nothing to establish that he owned the guns in question. However, ownership is not necessary to a finding that a person used a deadly weapon in violation of article 42.12. *See Dimas v. State*, 987 S.W.2d 152, 155 (Tex. App.—Fort Worth 1999, pet. ref'd). Appellant also argues that the State failed to prove that he actually or constructively possessed the guns or controlled the premises where the guns were found. However, the record contains multiple factors linking appellant to the contraband recovered. Appellant does not contest the sufficiency of the evidence supporting his conviction for possession with intent to deliver the narcotics recovered from the closet in the same room. The drugs and drug paraphernalia seized from the room where appellant was sleeping with his girlfriend were found in a closet in close proximity to appellant and were easily accessible to him, and the loaded guns were in plain view, leaning against a nearby wall. Officers also discovered clothing consistent with appellant's size hanging in the closet and a key to the residence. *See Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006) (stating that factors linking appellant to contraband may include, among others, defendant's presence when search is conducted, whether contraband was in plain view, defendant's proximity to and accessibility of contraband, whether other contraband or drug paraphernalia

8

was present, whether defendant owned or had right to possess place where contraband was found, and whether place where contraband was found was enclosed).

On the basis of this evidence, we conclude that a rational fact finder could have concluded beyond a reasonable doubt that appellant used the guns to facilitate his commission of the offense of possession with intent to deliver.[3]

We overrule appellant's sole issue.

---

[3] Appellant argues that "[t]here is no evidence that [he] ever held a gun, lunged for a gun, or otherwise attempted to physically possess a firearm," citing *Henton v. State*. 893 S.W.2d 165, 167–69 (Tex. App.—Houston [1st Dist.] 1995, no pet.) (following *Patterson's* reasoning that defendant "exhibits" deadly weapon by consciously displaying weapon during commission of felony offense in holding that appellant who had gun in his hand when confronted by police exhibited deadly weapon). Because we conclude that the evidence was sufficient for the jury to determine that appellant "used" a deadly weapon, we do not address whether he also "exhibited" a deadly weapon. *See Coleman*, 145 S.W.3d at 652 ("Thus, as the *Patterson* Court explained, one can 'use' a weapon without exhibiting it, but not vice versa."). Appellant also cites evidence presented in his motion for new trial. However, that evidence was not before the jury, and appellant does not challenge the trial court's denial of his motion for new trial. Therefore, we do not consider it here.

**Conclusion**

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.

Publish.  TEX. R. APP. P. 47.2(b).